## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KEELY BAILEY on her own behalf and on behalf of other similarly situated persons, | Case No.: |
| *Plaintiff,* | |
| v. | |
| BURY THE HATCHET KC, LLC, BURY THE HATCHET, LLC, BURY THE HATCHET HOLDINGS, LLC., and BURY THE HATCHET OP, LLC, | **COMPLAINT – CLASS ACTION** |
| | **JURY TRIAL DEMAND** |
| *Defendants.* | |

## CLASS ACTION COMPLAINT

### Introduction

1. With the push of a single button, modern computers can transmit text messages to millions of telephones. For businesses, this is a powerful and irresistible method of mass communication. At very minimal cost, a business can achieve targeted, immediate and vast promotion of its brand. At the same time, text messages are uniquely personal. Each advertisement is placed quite literally into the hands of a consumer.

2. The Defendants market themselves and their services through text message and advertisements sent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.

3. Plaintiff Keely Bailey ("Representative Plaintiff"), on her own behalf and on behalf of all other similarly situated persons, brings this Complaint for Injunctive Relief and Damages to

obtain from defendant all damages, injunctive relief, attorneys' fees, costs and other remedies plaintiffs are entitled to recover under law and equity.

## JURISDICTION AND VENUE

4. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1367(a) because Plaintiff asserts legal claims under federal law, the TCPA.

5. Many of the wrongful acts and omissions referenced in this complaint occurred, were initiated, were furthered, or were given assistance in this district.

6. Defendants conduct business and have harmed consumers in this district.

7. Venue is proper in this Court.

## PARTIES

8. Plaintiff Keely Bailey is an individual domiciled and residing in Johnson County, Kansas.

9. Bury the Hatchet, LLC, Bury the Hatchet OP, LLC and Bury the Hatchet Holdings, LLC (collectively "Bury the Hatchet") are foreign corporations organized under the law of Georgia, with their principal place of business in Georgia, with locations in Kansas and across the nation. S*ee* ¶13, *infra*.

10. Defendant Bury the Hatchet KC is located at 7105 West 105th Street, Overland Park, Kansas 66212.

11. Defendants, acting directly or else through other persons acting on their behalf, conspired to, agreed to, contributed to, assisted with, or otherwise caused all of the wrongful acts and omissions that are the subject of this complaint. To the extent that Defendants acted as alleged in this complaint through another person, such other persons were acting within actual or ostensible authority provided by Defendants, and Defendant ratified each act. Defendants had actual and ultimate control over every act or omission attributed to Defendants in this complaint. But for the conduct of Defendants and others acting on its behalf, none of the wrongful acts and injuries

alleged herein would have occurred.

## FACTUAL ALLEGATIONS

12. Bury the Hatchet KC is a premier recreational axe throwing facility in Overland Park, Kansas. It promotes itself as a great location for corporate outings, team building, or a night out with friends and family. Defendant has a 7,200 sq./ft axe throwing facility is in Overland Park, Kansas.

13. Bury the Hatchet also has locations in: (1) Atlanta, Georgia; (2) Bensalem, Pennsylvania; (3) Bloomfield/Montclair, New Jersey; (4) Cherry Hill, New Jersey; (5) King of Prussia, Pennsylvania; (6) Matawan/Old Bridge, New Jersey; and (7) Philadelphia, Pennsylvania. Additionally, Defendant advertises that they will be opening locations in: (1) Brooklyn, New York; (2) Paramus, New Jersey; and (3) Woodbridge, New Jersey.

14. Indeed, Bury the Hatchet is one of the fastest growing and most established axe throwing brands in the United States. Defendants offer various axe throwing games, tournaments and are part of the World Axe Throwing League ("WATL").

15. In order to participate, each paying customer must provide a valid telephone number on one of the multiple computer tablets stationed at the entry to the facility.

16. Defendants have engineered a method that collects information from its customers and then transfers it to computer systems under Defendants' possession, custody or control (herein "Defendants' computer systems").

17. After harvesting telephone numbers from its customers, Defendants' computer systems store the telephone numbers and then automatically transmits programmatically generated text message advertisements to the telephone numbers which are assigned to a cellular telephone service subscriber.

18.     Defendants' computer system has the present and proven ability to dial numerous cellular telephone numbers and transmit numerous text messages to large lists of stored cellular telephone number without any human involvement by any person. More simply stated, the Defendants harvest cellular telephone numbers from their customers and transmits these telephone numbers to Defendants' computer systems for the sole purpose sending automated spam advertising text messages to the cellular telephone numbers of consumers.

19.     Defendants' scheme to capture consumer contact information, including cellular telephone numbers, for their spam messages begins by mandating that customers provide their telephone number before participating in axe-throwing activities. Defendants demand customers' telephone numbers and other consumer information before they are allowed to participate in the axe-throwing activities.

20.     For example, to have to opportunity to participate in recreational axe throwing activities, a customer *must* fill out a form which in turn harvests the customer's cellular telephone data, among other personal information. In short, Defendants are requiring customers (for the privilege of participating) to provide them with their cellular telephone data. Defendants' computer systems then harvest the information and Defendant's computer systems process the data and sequentially generate advertising text messages of Defendant's services. The text messages are sent by Defendants or their agents.

21.     Defendants did *not* disclose that any person would be called, or that a person would be spammed with a commercial text message to a cellular telephone. Without any such notice to customers, Defendants' computer systems extracted telephone numbers and sent promotional text messages written by Defendants. Customers of Defendants were not informed of what the text messages would say; they had no power to control any of the contents of the messages; and had

no information on how they would be sent.  The customer only completes a form asking for a telephone number, which unbeknownst to her/him harvests sensitive data allowing Defendant's computer systems to send cellular text messages.

22. As designed, created, implemented, utilized, and deployed by Defendants, the system by which Defendants' harvests data from their users' telephones, and automatically generates spam text messages to thousands of consumers, operates as an automated telephone dialing system ("ATDS") as that term is defined under the TCPA.  Indeed, Defendant's ATDS equipment can generate numbers and dial them without human intervention regardless of whether the numbers are called randomly or sequentially generated or come from calling lists, which is the case here.  Defendants carried out and otherwise substantially assisted with an aggressive marketing campaign which has relied upon this ATDS functionality.  Defendants' computer systems generate commercial advertisements on behalf of the Defendants and, in an automated manner, sequentially transmits these advertisements as unsolicited short message system ("SMS") text messages to stored lists of cellular telephone numbers.

`

23.     Defendant's marketing campaign and its ATDS have injured numerous customers, including Plaintiff. On August 14, 2018, plaintiff received the unsolicited text message from Bury the Hatchet KC.





24.     This message was sent by Defendants' computer system, which are ATDS's and can generate numbers and dial them without human intervention.

25.     Upon information and belief, numerous other individuals have received the exact text message from Defendants, or similar text message spam.  Defendants have sent such text spam messages to customers of its other facilities across the United States.

26. The fact that Defendants utilize a computerized ATDS is illustrated by the systems ability to instantly generate a pre-programed, automated response to any telephone number from which t receives a message.

27. When a customer sends a text message to Defendants' ATDS, an immediate automated and pre-programed message is provided back to the telephone number from which the message was received. In other words, when a message is received Defendants' system stores and dials the number from which the message is received.

28. Upon information and belief, Bury the Hatchet has sent spam text messages to other customers around the country. Customers of other of Defendants' locations, made complaints of receiving spam text messages just days after a visit.

29. As part of its marketing scheme, Bury the Hatchet uses its system of electronic transmission devices which have the capability to send tens of thousands of text messages to consumers in an automated manner, and thereby sent the unsolicited text messages substantially similar, if not identical, to the text message identified above to numerous consumers throughout the United States, including Plaintiff. Considering that the Defendants have multiple locations used by thousands of consumers, Defendant sent far more text messages than humans could manually transmit economically. The transmission of so many unsolicited text messages burdened or injured the telecommunications infrastructure through which all text messages must pass. As a consequence, cellular service providers incurred avoidable costs which negatively impact the price that consumers like Plaintiffs must pay for cellular telephone services.

30. Consumers have no effective means to avoid the receipt of unsolicited text messages. Before the transmission of these text messages, none of the consumers to whom these text messages were directed provided defendant with consent to be sent the text messages.

Defendants did not obtain prior consent from the intended recipients before sending these text messages. Nor did Defendants have any reasonable basis upon which to conclude that the intended recipients of these text messages had invited the text messages sent by Defendants' computer systems.

31. By the conduct detailed above, Defendants, directly or through authorized or ostensible agents, engaged in unlawful and otherwise wrongful marketing and advertising practices. These practices have damaged Representative Plaintiff and persons similarly situated. Defendants used its ATDS to cause the transmission of unsolicited electronic commercial text messages to the cellular telephone numbers assigned to Representative Plaintiff and numerous other consumers.

32. Defendants' conduct above negatively affects the public interest. Defendants caused the unsolicited transmission of numerous SMS text messages to numerous consumers throughout the United States and its territories.

33. Plaintiff did not provide her cellular telephone number to defendants or Defendants' agents to receive marketing messages via text message or any other telephonic communication. Nor did she provide authorization or consent to defendants to send any text message or to store her personal contact information for purposes of marketing. Defendants nevertheless sent Plaintiff the text message. Plaintiffs' receipt of this unsolicited text message surprised and annoyed Plaintiff. Like other similarly situated persons who were sent such text messages, Plaintiff was injured as a result of Defendants' transmission of the text message in ways including, but not limited to, the following: (a) Having to pay a cellular service provider to receive the unsolicited text message from Defendant; (b) Invasion of privacy; (c) Aggravation and annoyance from having to retrieve or administer the unsolicited text message on the cellular telephone which received the unsolicited

text message; (d) Loss of use of the full capacities and capabilities, *e.g.*, electronic storage space, of the cellular telephone which received the unsolicited text message; (e) Loss of energy stored in the battery of the cellular telephone which received the unsolicited text message; and (f) Impairment, burden, or injury to the cellular telephone network upon which Plaintiff and consumers like her rely.

34. By the conduct detailed above, defendants directly or through authorized or ostensible agents acting within the scope of their authority, or else as subsequently ratified, caused the unlawful transmission of text messages to the cellular telephone numbers of Plaintiff and other similarly situated consumers and otherwise engaged in unlawful marketing and advertising practices.

35. Bury the Hatchet called cellular telephone numbers using an automatic telephone dialing system without prior express consent.

## CLASS ACTION ALLEGATIONS

36. Representative Plaintiff brings this class action on behalf of herself and as a representative of the following class of persons entitled to remedies under the Telephone Consumer Protection Act including, but not limited to, damages:

> All persons in the United States of America who were sent, to their cellular telephone numbers, at least one text message containing an advertisement from Bury the Hatchet without prior express consent.

32. Plaintiff's class claims satisfy all of the requirements for class action certification pursuant to the Civil Procedure Rules 23(a) and 23(b)(1), 23(b)(2), and 23(b)(3).

33. Satisfying all requisite numerosity requirements, numerous consumers in the United States are believed to be members of this class. Joinder of so many class members into a single action is impracticable. In fact, given the number of class members, the only way to deliver

substantial justice to all members of the class is by means of a single class action.

34.     There are questions of fact and law common to the class, which predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from defendants' conduct include, without limitation, the following:

- Whether defendants negligently, willfully, and/or knowingly caused violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, when sending unsolicited text messages to Representative Plaintiff and the class?

- Whether defendants used an automated telephone dialing system ("ATDS") to send text messages to Plaintiff?

- Whether any Defendants are vicariously or otherwise liable for unsolicited text messages sent to Plaintiff and the class?

39.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

40.     Representative Plaintiff's claims are typical of those of the class in that she, just like the other members of the class, was the victim of the unlawful marketing practices referenced in this complaint. The text message which Representative Plaintiff received is typical of the text messages which were transmitted to other members of the class.

41.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted in a general manner to the damage of the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests. Moreover, the individual damages of each of the class members are so low that it would be economically impracticable for putative class members to bring their claims individually.

42.     A primary factor in Plaintiff's bringing this case is for final injunctive relief which

is necessary and appropriate to ensure that Defendant ceases its unlawful and wrongful conduct. A class action is the most efficient means to ensure that Defendant does not injure the class in the future.

43. Representative Plaintiff is an adequate representative of the class because she is a member of the class and her interests do not conflict with the interests of the members of the class she seeks to represent. The interests of the members of the class will be fairly and adequately protected by Representative Plaintiff. Representative Plaintiff is represented by attorneys who have extensive, multi-jurisdictional experience representing clients in complex class action litigation.

44. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impractical and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

45. If this action is not certified as a class action, then the only way that the court system will not be overburdened by a multiplicity of suits over the subject matter of this complaint is if members of the class cannot or do not pursue an action against Defendants for reasons altogether unrelated to the merits of their claims, *e.g.*, challenges in accessing legal counsel, the mundane realities of surviving in a challenging economy, *et cetera*. Most Plaintiffs can obtain legal representation for their claims only through a class action. The only practical way to ensure that all members of the class are afforded an opportunity to obtain substantial justice with regard to the wrongs and injuries inflicted upon them by defendants is to resolve the subject matter of this complaint through a class action.

## FIRST COUNT
### Violations of the Telephone Consumer Protection Act
### (Representative Plaintiff and the National Class vs. All Defendants)

46. Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs as if the same were alleged herein this count.

47. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

48. Negligently, recklessly, willfully, and/or intentionally, Defendants directly and/or vicariously engaged in acts, omissions, and/or other actions that violate the Telephone Consumer Protection Act. Defendants directly and/or vicariously created, designed, deployed, and otherwise used an ATDS which initiated numerous telephone calls to cellular telephone numbers without prior express consent. These telephone calls transmitted unsolicited commercial text messages to the cellular telephones of Representative Plaintiff and the other members of the class as referenced in this complaint.

49. Plaintiff and each member of the proposed class are entitled to recover $500 in damages from the defendants for each violation of the Telephone Consumer Protection Act.

50. Additionally, Plaintiffs are entitled to all damages referenced herein and in accord with proof, attorneys' fees, costs, treble damages, and other remedies allowed by the Telephone Consumer Protection Act or else otherwise permitted by law.

51. The defendants should cease their unlawful conduct now and in the future with (a) a judicial declaration which clearly states the illegality of the conduct and (b) an injunction barring defendants from engaging in such illegal conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Representative Plaintiff, and all others similarly situated demand judgment against defendants and pray this Court do the following:

A. Issue a declaration which makes clear the illegality of defendants' wrongful conduct.

B.   Grant a permanent injunction enjoining defendant, its officers, successors, agents, assigns, and all persons in active concert or participation with Defendant, from engaging in the unlawful conduct, including without limitation using an automated telephone dialing system to send unsolicited text messages.

C.   Declare that the subject text messages are commercial electronic text messages.

D.   Declare that Defendants' computer systems are an ATDS under the TCPA.

E.   Declare that Defendants did not first obtain any consent before sending the subject text messages to Plaintiffs.

F.   Declare that Defendant's actions as alleged in this complaint violate the TCPA.

G.   Order defendant to make Representative Plaintiff and the other class members whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above in amounts to be determined at trial but in no event less than $500.00 for each violation of 47 U.S.C. § 227. *et seq.*

H.   Order defendants to make Representative Plaintiff and the other class members whole by providing appropriate prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful practices.

I.   Order defendants to pay Representative Plaintiff and the other class members punitive and/or treble damages to the fullest extent allowed by law, including but not limited to all punitive and/or treble damages for a knowing or willful violation of the Telephone Consumer Protection Act.

J.   Award Representative Plaintiff and the other class members the costs of this action, including attorneys' fees, as authorized by law and/or as sounds in tort, contract, or equity.

Grant any additional or further relief as provided by law or equity which this Court finds appropriate, equitable, or just.

HKM ATTORNEYS LLP

*/s/ John J. Ziegelmeyer III*
John J. Ziegelmeyer III          KS No. 23003
1501 Westport Road
Kansas City, Missouri 64111
Tel: 816.875.3332
jziegelmeyer@hkm.com
www.hkm.com

Donald W. Heyrich, Esq.
HKM Attorneys
600 Stewart Street
Seattle, WA 98101
Tel:206.383.2504
dheyrich@hkm.com
www.hkm.com

*Pro Hac Vice Motion Forthcoming*

ATTORNEYS FOR PLAINTIFF